**STOKELY FOODS, Inc. v. NATIONAL LABOR RELATIONS BOARD.**

No. 13443.

United States Court of Appeals
Fifth Circuit.

Jan. 11, 1952.

--------◇--------

Frederic D. Anderson, Indianapolis, Ind., for petitioner.

Marvin E. Frankel, Atty. NLRB, David P. Findling, Assoc. Gen. Counsel NLRB and A. Norman Somers, Asst. Gen. Counsel NLRB, all of Washington, D. C., for respondent.

Before HOLMES, BORAH, and STRUM, Circuit Judges.

BORAH, Circuit Judge.

This case is before the court on petition of Stokely Foods, Inc., to review and set aside an order of the National Labor Rela-

tions Board which directed petitioner to cease and desist from discouraging membership in the American Federation of Labor or any other labor organization of its employees, by discharging or refusing to reinstate any of its employees or by discriminating in any other manner in regard to their hire or tenure of employment, or any term or condition of employment; from interrogating its employees concerning their union affiliations, activities or sympathies; from threatening to close its Lawrence, Kansas plant in the event that the American Federation of Labor or any other labor organization succeeds in unionizing the plant; and from in any other manner interfering with, restraining, or coercing its employees in the exercise of the right to self-organization. The Board's order affirmatively directed petitioner to offer to reinstate and to make whole three employees whom the Board found to have been illegally discriminated against in regard to their hire or tenure of employment. In response to the petition, the Board asks that its order be enforced.

The principal questions presented for our determination are: (1) whether the Board properly included in its complaint allegations that petitioner unlawfully interrogated and threatened its employees; (2) whether the Board properly found that petitioner discriminatorily discharged Willis L. Eastland and discriminatorily terminated the employment of Paul J. Niemann and Fred Nightingale by refusing to reinstate them; and (3) whether the Board erred in finding that the petitioner unlawfully interrogated and threatened its employees.

Petitioner's first point concerns a variation between the charges filed by the Union and the complaint issued by the Board. The charge and the amended charge,[1] which were admittedly filed with the Board within six months following the occurrence of the events to which they related, stated in substance that in rehiring after a temporary shutdown of its plant petitioner discriminated against seven named employees because of their membership and activities in behalf of the American Federation of Labor, a labor organization; and that by such acts petitioner interfered with, restrained and coerced its employees in the exercise of the rights guaranteed in Section 7 of the Act. Thus the Union charged violations of Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act as amended.[2] The complaint issued by the Board alleged in part that petitioner discriminated in regard to hire and tenure of employment, and also alleged that in violation of Section 8(a)(1) petitioner interfered with, restrained, and coerced its employees in the exercise of their rights guaranteed in Section 7. By way of specification the complaint alleged among other things that petitioner interrogated its employees' concerning their union affiliation and activities; and threatened, urged and persuaded its employees to refrain from assisting, becoming members of, or remaining members of the Union. To the extent that the complaint alleged that respondent unlawfully interrogated and threatened its employees in violation of Section 8(a)(1), petitioner contends that the complaint was invalid under Section 10(b) of Act for the

---

1. The original charge, filed on December 15, 1948, and the amended charge, filed January 4, 1949, were identical save for the addition of one named employee in the amended charge. The second amended charge, filed October 14, 1949, omitted the names of three employees and changed the dates of the alleged discrimination.

2. 61 Stat. 136, 29 U.S.C.A. § 151 et seq.

3. The pertinent portion of Section 10(b) reads as follows: "Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: Provided, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person ag-

reason that such violations were not specified in the charge filed by the Union. This question was decided adversely to petitioner's contention in Cathey v. N. L. R. B., 5 Cir., 185 F.2d 1021, affirming 86 N.L.R.B. 157, set aside on other grounds, 5 Cir., 189 F.2d 428, and to that decision we adhere. See also N. L. R. B. v. Atlanta Journal Company, 5 Cir., 187 F.2d 13, affirming 82 N.L.R.B. 832; N. L. R. B. v. Westex Boot & Shoe Co., 5 Cir., 190 F.2d 12, 13–14.

■ As to petitioner's second point, we are of opinion that the record as a whole fully supports the Board's findings that because of their Union activities petitioner discriminatorily discharged Eastland and discriminatorily terminated the employment of Niemann and Nightingale. Eastland initiated the drive to organize the plant employees. On the advice of Clarence Strunk, a representative of the American Federation of Labor, he solicited and obtained the names of 52 employees that wanted an organization at the plant. Petitioner knew of the organizational activity in the plant from the very outset and Plant Manager Pickett considered the union drive of importance and reported it and discussed it on several occasions with C. LeRoy Eldridge, petitioner's Director of Personnel Relations. Twelve days after Eastland initiated union activity in the plant and at a time when the union's first meeting was being publicized, Eastland was summarily discharged by Plant Superintendent Vance for the assigned reason that he had "too much help." When Eastland suggested that he was being laid off because of his union activities, Vance replied, "Willis, I don't know anything about it" and "his face got as red as if I had slapped him." Nor was Eastland rehired during the busy pea-pack season when he applied to petitioner for re-employment. Though, according to Plant Manager Pickett, practically anyone alive enough to make his way to the plant would be given a job during this busy season. Considering petitioner's knowledge of Eastland's leading role in the union movement, the timing and abruptness of his discharge, the numerous and unconvincing reasons advanced for his dismissal, and the subsequent refusal to rehire him during the height of a rush season when because of the shortage of labor anyone who applied was hired, it was reasonable for the Board to infer and conclude that the real reason for Eastland's discharge was petitioner's desire to rid itself of the union's chief protagonist.

■ With reference to the termination of the employment of Nightingale and Niemann, it appears that they also were active in attempting to organize the employees. Nightingale was the first to sign Eastland's list of those employees interested in organizing a union, helped publicize union meetings and passed around applications for membership. At the second meeting, held on October 6, the Stokely employees elected Paul Niemann temporary president of the union. On October 8, 1948, petitioner shut down its plant for an indefinite period. Immediately prior to re-opening the plant a recall list was prepared and notices were delivered to the various employees requesting their return to work. Employees Niemann and Nightingale, however, were among a very few who were never put back to work. Following the re-opening of the plant on November 1, 1948, both Nightingale and Niemann applied for and were refused re-employment, despite the fact that between November 1, 1948, and January 17, 1949, forty-eight new employees were hired. Considering this evidence, together with that which fairly detracts from its weight, we cannot say that the Board's findings are unsupported by substantial evidence on the record considered as a whole.

■ Finally it is urged that the Board erred in its conclusion that warehouse foreman Harrold's warning to employee Pobjoy, that Stokely might close down the

---

grieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the day of his discharge. Any such complaint may be amended by the member, agent, or agency * * * at any time prior to the issuance of an order based thereon."

plant if the union got in, and Plant Manager Pickett's interrogation of employee Herschell, as to whether he would join the union, constituted violations of section 8(a)(1). We are of opinion that at the time the conversation with Harrold took place Pobjoy was not a supervisor within the meaning of the Act. The evidence adduced does not indicate that during the period in question Pobjoy had authority to hire or fire nor that he had the authority to responsibly direct other employees in the exercise of that independent judgment requisite to supervisory capacity. Ohio Power Co. v. N. L. R. B., 6 Cir., 176 F.2d 385, 11 A.L.R.2d 243. In the light of the discriminatory discharges already discussed, we think Harrold's warning to Pobjoy and Pickett's questioning of Herschell might properly be deemed coercive. N. L. R. B. v. Alco Feed Mills, 5 Cir., 133 F.2d 419, 421; N. L. R. B. v. Chautauqua Hardware Corp., 2 Cir., 192 F.2d 492.

The petition to set aside the Board's order is denied. The Board's petition to enforce its order is granted.

Enforced.