## NATIONAL LABOR RELATIONS BOARD v. UNITED STATES GYPSUM CO.

No. 14048.

United States Court of Appeals
Fifth Circuit.

Aug. 6, 1953.

Rehearing Denied Aug. 31, 1953.

Harold D. Burgess and Charles M. Price, Chicago, Ill. (MacLeish, Spray, Price & Underwood, Chicago, Ill., of counsel), for respondent.

Before HOLMES, BORAH, and RIVES, Circuit Judges.

BORAH, Circuit Judge.

This case is before the court on petition of the National Labor Relations Board, seeking enforcement of its order requiring respondent to cease and desist from discouraging membership in any labor organization of its employees by discriminatorily discharging or refusing to reinstate, or failing to recall any of its employees; from interrogating its employees concerning their union membership, activity, or attitude; and from interfering with, restraining, or coercing its employees in the exercise of their right to self organization. The Board's order affirmatively directed respondent to offer to reinstate and to make whole three employees whom the Board found to have been illegally discriminated against in regard to their hire or tenure of employment, and to post appropriate notices.

The questions presented for our determination are: (1) whether the Board properly included in its complaint allegations that respondent discriminatorily laid off and refused or failed to reinstate Bennie Pearson and Paul Johnson; (2) whether the Board properly found that respondent discriminatorily laid off or refused to recall Paul Johnson, Hiram Peoples, and Bennie Pearson because of their Union activity; and (3) whether the Board erred in finding that the respondent unlawfully interrogated and threatened its employees. A fourth question is presented by respondent's motion for leave to adduce additional evidence with respect to the organization and existence of a local union at respondent's Greenville, Mississippi, plant, which local allegedly had not complied with subsections 9(f), (g), and (h) of the National Labor Relations Act,[1] as amended.

The first point concerns a variation between the timely amended charge filed by

Owsley Vose, Atty., NLRB, A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Assoc. Gen. Counsel, George J. Bott, Gen. Counsel, Marshall J. Seidman, Washington, D. C., for petitioner.

1. 61 Stat. 136, 29 U.S.C.A. § 151 et seq.

the union, The International Woodworkers of America, C.I.O., and the complaint issued by the Board. Respondent contends the unfair labor practices alleged in the complaint occurred more than six months prior to the filing of the second amended charge and the Board was prohibited by section 10(b) of the Act from issuing a complaint based thereon. The amended charge filed on April 25, 1949, in so far as here important, alleged generally that respondent had engaged in unfair labor practices within the meaning of section 8(a)(3) of the Act by discharging Flannigan Harper and Hiram Peoples, on April 10, and February 6, 1949, respectively, because of their membership in and activities on behalf of the International Woodworkers of America, C.I.O., a labor organization. Respondent concedes that this charge was timely filed. Thereafter, on April 17, 1950, the second amended charge was filed by the union, reiterating the allegation that respondent had violated section 8(a)(3) of the Act but deleting the name of Flannigan Harper and alleging, in addition to Hiram Peoples, that respondent laid off and refused to employ Bennie Pearson and Paul Johnson, on February 5, 1949, and January 26, 1949, respectively, all because of their membership in and activities on behalf of the union. In Cathey Lumber Co. v. N. L. R. B., 5 Cir., 185 F.2d 1021, affirming per curiam 86 N.L.R.B. 157, set aside on other grounds, 189 F.2d 428, the charge named three employees as having been discharged in violation of Section 8(a)(3) of the Act. The complaint, which was issued more than six months after the discharges in question, named seventeen additional employees as having been discharged at the same time. There, as here, the employer contended that the complaint was invalid but we did not think so. We reaffirmed our view on the subject in Stokely Foods, Inc. v. N. L. R. B., 5 Cir., 193 F.2d 736. See also N.L.R.B. v. Westex Boot and Shoe Co., 5 Cir., 190 F.2d 12, 13–14. Respondent has presented nothing new on the issue. Accordingly, we adhere to our former decisions.

■ As to respondent's second point, we are of opinion that substantial evidence on the record considered as a whole supports the Board's findings that because of his union activities respondent discriminatorily failed to reemploy Hiram Peoples. On the other hand, a fair estimate of the entire evidence leaves us firmly of the conviction that there is a lack of substantial evidence to support the Board's finding of discriminatory termination of the employment of Bennie Pearson and Paul Johnson. On the contrary, we think the evidence overwhelmingly indicates that these two men were laid off and not recalled because they were unusually poor workmen.

Bennie Pearson was employed in the Board Mill as a grinder operator. All of the evidence on the subject discloses that Pearson was a shiftless, undependable, habitually tardy employee, who had been admonished for his failings on numerous occasions and had failed to mend his conduct. Isac Carter, an hourly-paid fellow employee in the grinding room, testified that Pearson could not operate a grinder because he would let it run empty and was late for work most of the time. G. M. Vaught, the Superintendent of the Board Mill, warned Pearson several times that if he did not cease his tardiness and perform better on the job, foreman Mauceli was going to lay him off and he, Vaught, would not interfere. In response to a question as to the factors taken into consideration in selecting men to be layed off, Joe Mauceli stated that in Pearson's case "It didn't take long. He was just the sorriest man I had." He also testified that he had threatened Pearson with discharge if he did not come in on time. Another shift foreman, Clarence Sheppard, swore that Pearson was laid off for the reason that he was not dependable and would permit his grinder to run empty. James Bentley, at the time of his testimony the proprietor of a furniture store in Saltillo, Mississippi, but formerly employed by respondent in the grinding room, classified Pearson as a poor workman. Indeed, Bennie Pearson's own testimony revealingly corroborates the testimony offered by respondent's witnesses:

"Q. Didn't he [Mauceli] tell you that if you didn't do better and get to

work on time that he'd have to let you go? A. That's right.

\* \* \* \* \* \*

"Q. Quite a number of times you would be late, wouldn't you? A. I was on time more times than I was late.

"Q. About 50-50? A. Yes,sir.

"Q. Would that be about right? A. Yes, sir."

Turning now to Paul Johnson, the testimony of fellow workmen and superiors again combines to clearly indicate that he was a highly unsatisfactory employee. Joseph Brown and Ed Jones, who were employees with Johnson in the Press Board Department, testified that he was the type who would not do his fair share of the work, as long as he could place the burden on another. However, the principal fault which respondent found with Johnson's work was the fact that he talked too much. Five witnesses testified that Johnson was a habitual talker, that he would frequently wander off the job, and that his talking interfered with his work and that of others. Four witnesses testified that he was prone to leave his work to smoke in violation of respondent's shop rule. Johnson testified that he knew that the shop rule allowed smoking only on two rest periods and admitted that he would leave his work "at other times" and take a smoke. The following excerpt from his testimony is also corroborative of the fact that he talked too much.

"Q. Well, you like to talk quite a bit, don't you? A. Yes, sir, when God turns a man loose, he's going to talk. You take a man don't talk, he ain't got no religion.

"Q. You talk to them all the time? A. Yes, sir, when the spirit hit me, I'm going to talk.

"Q. The spirit hits you whether you are working for the United States Gypsum Company or whether you are some place else, doesn't it? A. Anywhere. He said, 'Go preach My Word and Carry the Gospel.' He pay me at the end, and that's what I'm waiting for.

"Q. You did a lot of that talking while you were on the job? A. Oh, yes, I talked on the job."

In so far as Pearson and Johnson are concerned, this is not the familiar case where an employer discharges or refuses to rehire those most prominent in union activities. On the contrary, there was no direct evidence of any union activities whatsoever by Pearson. The only evidence of union activity by Johnson was his own testimony that he sometimes opened the union meetings with a prayer. Neither of these two men appear to have been more prominent than fellow employees who were also casual members of the union and the record fails to disclose any possible reason why they should be singled out for discriminatory treatment on the basis of union membership or activities. On the other hand, their work performances were such as to afford a good reason for respondent's action. We think it is clear that respondent's avowed reason for its action was the real reason. It bears the unmistakable ring of truth.

Hiram Peoples was hired by respondent in September, 1946, as a general laborer in the fabricating department at respondent's Greenville, Mississippi, plant. After a period of doing odd jobs, he was assigned to operating the power-saw in the fabricating department. Respondent's fabricating and shipping superintendent, Neyman, and its general foreman, Youngberg, both testified that People's performance on the cut-off saw was good; that he came to work regularly and was an agreeable, dependable workman. He was also financial secretary of the local union, and respondent was well aware of the fact.

Respondent seeks to attribute its failure to recall Peoples to the fact that he was not a versatile workman and did poor work on many of the jobs other than the power-saw. Some of this may have been due, as petitioner contends, to respondent's failure to leave him on such other jobs for a long enough period of time to afford an opportunity to develop the requisite skill. Be that as it may, it is clear that Peoples' physical limitations were such that when the reduction in force on February, 5, 1949,

was necessitated by falling production, respondent was fully justified in laying off Peoples as during such period the power-saw was to be used only intermittently, thus requiring the power-saw operator to spend much of the time at other jobs for which Peoples' physical stature did not well qualify him. However, this does not adequately explain why respondent failed to recall Hiram Peoples when production picked up to such extent that it ended the period March 15, to July 31, with more employees in the fabricating department where Peoples worked, than it had before the layoffs necessitated by falling production in the first quarter of the year. The question is a close one but after carefully considering all of the evidence and bearing in mind that this court is not here to try the case *de novo*, we are of opinion there is substantial evidence to support the Board's inference of fact that the failure to recall Peoples was due to his membership in and activities on behalf of the Union.

■ As for the Board's finding that respondent unlawfully interrogated and coerced its employees, we think it is clear that the evidence fully supports the Board on this issue. It is true, as contended by respondent, that an employer may express any views or opinion but only if such expression contains no threat of reprisal or force, or promise of benefit. Suffice it to say, we agree with the Board's findings that respondent's expressions of opinion went beyond that which is permitted.

Finally, respondent has filed a motion in this court for leave to adduce additional evidence with respect to the organization and existence on June 1, 1950, and thereafter of a local union chartered by the International Woodworkers of America to represent the employees at its Greenville plant; and with respect to the failure of such local to comply with subsections 9(f), (g) and (h) of the National Labor Relations Act, as amended by the Labor Management Relations Act, 1947, § 101. Section 9(h) of the Act provides in part that no complaint shall be issued pursuant to a charge filed by a labor organization unless there is on file with the Board an affidavit executed by each officer of such labor organization and the officers of any national or international of which it is an affiliate that he is not a member of the Communist party. The record discloses that the International Woodworkers of America, C.I.O., was certified as exclusive bargaining representative at the plant in question on September 27, 1948. This union was the charging party. Respondent apparently concedes that the charging party, the International Woodworkers of America, and the affiliated C.I.O. were in full compliance with the Act at the time the complaint issued and seeks only to adduce additional evidence to show that after the complaint issued and after the hearing in this case a local was organized at the Greenville plant and a charter was issued to it by the International Woodworkers as Local Union No. 96. Respondent claims that such local did not comply with the provisions of the Act.

■ We agree with respondent's argument that the benefit of the Act may not flow to a noncomplying labor organization but we fail to see how the argument is here applicable. The instant case does not involve a refusal to bargain and, since Local 96 was concededly not in existence when the complaint issued on April 17, 1950, it could not possibly have been in compliance at that time. Under these circumstances, we think the date the complaint issued was the crucial time under section 9(h). N. L. R. B. v. Dant, 344 U. S. 375, 73 S.Ct. 375. Therefore, since respondent seeks by its motion to adduce additional evidence relating to the compliance or noncompliance of a local which was not in existence until after the issuance of the complaint, we fail to see how the evidence would be material to any issue before this court. The motion is denied.

The petition of the Board for enforcement of the orders will be Granted except as to that part of paragraph 2, subdivision (b) requiring respondent to reinstate Pearson and Johnson and (c) requiring them to be made whole. As to that part, it will be Denied.