Louis Schwartz, Atty., National Labor Relations Board, A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Associate Gen. Counsel, George J. Bott, Gen. Counsel, David J. Vann, Atty., N.L.R.B., Washington, D. C., for petitioner.

Mark L. Taliaferro, Birmingham, Ala., George A. LeMaistre, Tuscaloosa, Ala. (LeMaistre, Clement & Gewin, Tuscaloosa, Ala., Burr, McKamy, Moore & Tate, Birmingham, Ala., of counsel), for respondent.

Before BORAH, and RUSSELL, Circuit Judges, and DAWKINS, District Judge.

BORAH, Circuit Judge.

**NATIONAL LABOR RELATIONS BOARD**
v.
**NEWTON.**
**No. 14649.**

United States Court of Appeals Fifth Circuit.

July 6, 1954.

This case is before the Court on petition of the National Labor Relations Board, seeking enforcement of its order requiring respondent, D. W. Newton, doing business as Newton Brothers Lumber Company, to cease and desist from discouraging membership in the International Woodworkers of America, C.I.O., or any other labor organization of his employees, by discharging or refusing to reinstate any of his employees or by otherwise discriminating in regard to their hire and tenure of employment; from interrogating or polling his employees concerning their union affiliation, activities, and sympathies; from threatening them with discharge or economic

reprisals or threatening to close his business because of their union activities; from participating in, ratifying or condoning physical assaults by his employees upon other employees because of their union affiliation, activities, and sympathies; and from in any other manner interfering with, restraining, or coercing his employees in the exercise of the rights guaranteed by section 7 of the Act, 29 U.S.C.A. § 151 et seq. The order further directed respondent to offer reinstatement to four named employees [1] and to make them whole for any loss of pay suffered by reason of respondent's discrimination against them; to instruct his employees that he will not permit any group of employees to exclude other employees from the plant because of their membership in, or activities on behalf of any labor organization, and that assaults upon or threats of violence to their fellow employees will not be permitted; and to post appropriate notices.

The questions presented for our determination are: (1) whether the Board properly included in its complaint, as amended, allegations that petitioner discharged and thereafter failed and refused to reinstate Annie Belle Colburn; (2) whether the Board found that respondent discriminatorily discharged Buck Carroll, Maudie Booth, Billy Joe Green, and Annie Belle Colburn in violation of section 8(a) (3) and 8(a) (1) of the Act; [2] and (3) whether the Board erred in finding that respondent violated section 8(a) (1) of the Act by encouraging and condoning physical assaults upon union adherents, by threatening to discharge employees because of their union activities, by threatening to close its plant if the union got in, and by questioning and polling his employees as to their union membership and activities.

██ The first question raises a serious procedural issue. The original charge in this case was filed on September 5, 1951. It alleged, among other things, that on various dates in July, 1951, respondent discriminated in regard to the hire and tenure of employment and to the terms and conditions of employment of four named individuals. The first amended charge, which was filed on June 19, 1952, added the names of three individuals to the list of employees discriminated against in July, 1951, but otherwise merely reiterated charges contained in the original charge. Thereafter, the complaint was filed by the Board. It alleged in part that on various dates in July, 1951, respondent discharged and thereafter failed and refused to reinstate the seven employees named in the charge and the first amended charge. At the hearing before the Trial Examiner on July 7, 1952, the General Counsel's representative moved to amend the complaint to add to the list of dischargees the name of Annie Belle Colburn and indicated that the date of the discrimination should read "approximately October 1, 1951." Respondent's motion to dismiss the complaint on the ground that the amendment violated section 10(b) of the Act was denied and the motion to amend the complaint was granted.

Respondent now contends that inasmuch as the alleged discriminatory discharge of Annie Belle Colburn occurred after the original charge was filed and more than six months prior to the time when her name was first introduced into the case by way of amendment to the complaint at the hearing, the Board was

---

1. Maudie Booth, Buck Carroll, Billy Joe Green, and Annie Belle Colburn.

2. The Trial Examiner found that Billy Joe Green was not discharged but left his employment and did not return. The Board reversed the Trial Examiner, finding that Mr. Green was ousted from the plant and compelled to remain away from work by anti-union employees; that respondent acquiesced in the exclusion; and that respondent thereby constructively discharged Mr. Green. The Board also reversed the Trial Examiner's findings as to Annie Belle Colburn. The Board agreed with the Trial Examiner's findings that Mary Ann Lucas and Velma Hardy voluntarily quit their employment; and that the General Counsel failed to sustain the allegations of the amended complaint to the effect that Luther Logan was discriminatorily discharged and thereafter refused reinstatement.

without power under section 10(b) of the Act to issue a complaint based thereon. We agree with respondent.

Section 10(b) of the Act provides, in part, that whenever it is charged that any person has engaged in an unfair labor practice, the Board shall have power to issue a complaint stating the charge in that respect, provided that no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge. It is further provided that any such complaint may be amended by the Board member, agent, or agency, at any time prior to the issuance of an order based thereon. This section of the Act leaves several questions unanswered and, as a result, we have been called upon to consider its provisions on numerous occasions. In Cathey Lumber Company v. N.L.R.B., 5 Cir., 185 F.2d 1021, affirming Per Curiam 86 N.L.R.B. 157, set aside on other grounds 5 Cir., 189 F.2d 428, the charge named three employees as having been discharged in violation of section 8 (a) (3) of the Act fifteen days prior to the filing of the charge. The complaint, which was issued more than six months after the discharges in question, named seventeen additional employees as having been discharged at the same time. We held that section 10(b) did not bar the allegations of the additional instances of discrimination alleged in the complaint, but what is here important is that the Board's decision which we affirmed stated: "As there is no requirement that the charge set forth each unfair labor practice allegation to be litigated, the practice of enlarging upon the charge to include in the complaint allegations of unfair labor practices uncovered during the investigation likewise continues unchanged under the amended Act—*but with this important exception made necessary by the purpose of the limitation period imposed by the proviso: that the complaint shall not include allegations of any unfair labor practices occurring more than 6 months prior to the filing and service of the charge initiating the case.*" (Emphasis supplied.) We reaf-

firmed our view in N.L.R.B. v. U. S. Gypsum Co., 5 Cir., 206 F.2d 410, and in Stokeley Foods, Inc., v. N.L.R.B., 5 Cir., 193 F.2d 736. And, although respondent has not called the matter to our attention, we have considered whether the Board had power to issue a complaint based on the discriminatory discharges alleged in the first amended charge, which unfair labor practices here did not occur more than six months prior to the filing of the charge initiating the case. We are of the opinion that under the principle enunciated by this Court in the Cathey Lumber Company case the Board did have power to issue that portion of the complaint which was based on the first amended charge.

The question presented by the allegations of the complaint concerning Annie Belle Colburn, however, is readily distinguishable from the Cathey Lumber Company case. The testimony disclosed and the Board found that the date of the conversation between Superintendent Weaver and employee Colburn at which time the discrimination against her occurred was October 1, 1951. This event was subsequent to the filing and serving of the first charge and more than six months prior to the filing and serving of the amended charge whereas in the Cathey Lumber Company case all discriminatory actions occurred prior to the filing of the charge initiating the case. The present situation is much more nearly like Indiana Metal Products Corp. v. N.L.R.B., 7 Cir., 202 F.2d 613, 619, wherein the original charge filed by the union on May 2, 1950, alleged that the company was engaged in unfair labor practices in violation of sections 8(a) (1) and (3) of the Act by the discharge of three employees because of activities upon behalf of the union. An amended charge was filed December 29, 1950, which claimed violation of section 8(a) (1), (2), and (3) of the Act, and thereafter, on May 11, 1951, a complaint was issued which departed from the charge and amended charge to the extent that it alleged that on April 26, 1950, a supervisory employee, Lewis, questioned another named

employee about her union activity and threatened her; and further, that about July 23, 1950, the company announced and granted benefits to its employees in the form of paid holidays and a group insurance program. The court in holding that the Board was not justified in basing findings of unfair labor practices upon these two specific events which occurred subsequent to the filing of the first charge and more than six months prior to the filing and service of the amended charge had this to say:

"Courts have not hesitated to sustain allegations in Board complaints which were considerably wider in scope than the language contained in the charge. N.L.R.B. v. Kobritz, 1 Cir., 193 F.2d 8, 15; N.L.R.B. v. Kingston Cake Co., 3 Cir., 191 F.2d 563, 567. * * * Basing the complaint upon broad allegations in the charge may well, at times, be unfair to an employer, but such interpretation is required by the broad language of Sec. 10(b); 'Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board * * * shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect * * *.' However, one limitation has been adhered to. The Board is barred under Sec. 10(b) of the Act from enlarging or adding to the language of the charge so as to include unfair labor practices committed more than six months prior to the filing and serving of the charge. N.L.R.B. v. Globe Wireless, Ltd., 9 Cir., 193 F. 2d 748, 752; Joanna Cotton Mills Co. v. N.L.R.B., 4 Cir., 176 F.2d 749, 754.

\* \* \* \* \* \*

"The testimony disclosed and the Board so found that the date of the conversation between foreman Lewis and employee Gilliland was after the middle of May, 1950. The Board also found that the date when the company announced its policy as to paid holidays was on June 20, 1950. Thus, each event was subsequent to the filing and the serving of the first charge and more than six months prior to the filing and serving of the amended charge. We hold that the Board was not warranted in basing a finding of unfair labor practice upon either of these occurrences."

We think the foregoing principles are sound. Without the limitation which we have here placed on section 10(b) of the Act, its provisions would be rendered meaningless to a great extent. For the reasons stated, we hold that insofar as the allegations of the amended complaint pertaining to Annie Belle Colburn are concerned, the Board is barred under section 10(b) of the Act.

This brings us to a consideration of the Board's findings which were to the effect that respondent discriminatorily discharged and thereafter refused to reinstate Billy Joe Green, Maudie Booth and Buck Carroll. We have carefully examined the entire record in the case and conclude that the Board rightly found (1) that respondent was fully aware of the fact that Green had been ousted from the plant by antiunion employees and compelled to remain away from work by threats of future violence; that respondent acquiesced in Green's exclusion from the plant and thereby constructively discharged him in violation of section 8(a) (3); and that in view of respondent's acquiescence in Green's forcible ouster from the plant, the respondent violated section 8(a) (1) of the Act by the statement of its foreman to Green that he could not return to work because of his union sympathies; (2) that Carroll was discriminatorily discharged as a result of his lawful union activities and respondent thereby engaged in unfair labor practices within the meaning of section 8(a) (3) and 8(a) (1) of the Act; and (3) that respondent acquiesced in and condoned the assault upon Booth by her sister employees because of her union membership or advocacy; that following the assault and while she was suffering from severe injuries and in need of medi-

cal attention respondent's superintendent ordered her to work or get out of the plant; and that this ultimatum was, under the circumstances, tantamount to her being discharged and constituted a violation of section 8(a) (3) and section 8(a) (1) of the Act. Insofar as the 8(a) (1) violations are concerned, respondent concedes that they are for the most part based on the 8(a) (3) violations. Beyond that, it is clear that the record fully supports the Board's further findings that respondent interrogated and polled his employees concerning their union affiliations, activities, and sympathies; and that respondent threatened them with economic reprisals and threatened to close down the plant because of the union activities of a part of the employees. Accordingly, we hold that there is substantial evidence on the record considered as a whole to support the Board's findings pertaining to Maudie Booth, Billy Joe Green and Buck Carroll. Therefore, that portion of the Board's order will be enforced.

The Board's order is amended so as to eliminate from paragraph 2(a) thereof the inclusion of Annie Belle Colburn, the notice to be posted is similarly amended, and enforcement is decreed of the order as so amended.