Argued January 5, modified January 28, 1970

BOUSE, *Appellant, v.* BURNS ET AL,
*Respondents.*
464 P. 2d 318

*Hugh Hafer,* Seattle, Washington, argued the cause
for appellant. With him on the briefs were Warren

Woods, Washington, D. C., and Herbert B. Galton, Portland.

*Don S. Willner*, Portland, argued the cause for respondents. Donald Burns, Elwood Cushman, Karl Hopp, Richard W. Long and John Hanthorne, individually and as representatives of all members of Local 166, Association of Western Pulp and Paperworkers. With him on the brief were Willner, Bennett & Leonard, Portland.

No appearance for respondents, First National Bank and the United States National Bank.

TONGUE, J.

This is a suit to recover the assets of a local union of pulp and paper mill workers at Oregon City, which in 1964 seceded from the International Brotherhood of Pulp, Sulphite and Paperworkers, AFL-CIO, (to be referred to as the "International") along with a number of other local unions in Oregon and Washington, which then became local unions of a new Association of Western Pulp and Paperworkers (to be referred to as the "Association").

The original complaint was filed in 1964 in Clackamas county at about the same time that a complaint was filed in Multnomah county by representatives of the same International against officers of the Association to recover funds turned over to them by 32 seceding local unions. In *Phillips v. Perrin*, 253 Or 540, 450 P2d 767 (1969), this court affirmed a judgment for plaintiffs in that case, under which it was held that the International was entitled to recover such funds, in the amount of some $160,000, most of which had already been expended in organizing the new Association.

The complaint in this case was originally filed in the name of the former president of Local 166 (the local union at Oregon City), who then contended that the Local continued to exist at that time as a local of the International and sought to recover for the original local approximately $10,000 in assets, including some $6,000 which had been transferred to a safe deposit box in the name of three officers of the original local (who were also officers of the new seceding local) and some $4,000 which had been held in separate bank accounts as a Health and Welfare Fund. Subsequently, and apparently after plaintiff had left Oregon City, a complaint in intervention was filed on behalf of the´ International to recover the same funds. The trial judge, prior to the decision by this court in *Phillips v. Perrin,* held that the International was not entitled to recover such funds, primarily because of arbitrary and inequitable conduct, which defendants had alleged as a separate affirmative defense.

Subsequently, it was held by this court in *Phillips v. Perrin* that substantially the same conduct did not constitute misconduct which was sufficiently serious to bar the International from enforcing, as a contract between the International and its local unions, the following provision of its constitution:

"* * * All *property* of any local union attempting to withdraw or secede from the International Union, whether taken into possession of a trustee or not, shall become a Trust Fund of the International Union to be used first for the benefit of the local union and second for the benefit of the International Union and its members." (Emphasis added)

While that decision thus disposes of the primary defense urged by defendants in this case in the trial

court, it is nevertheless contended by them, as the respondents on this appeal, that this case involves six additional issues which were not decided by either the trial court in this case or by this court in *Phillips v. Perrin.*

We have carefully considered each of these six points and have examined the record and the authorities cited by defendants in support of them. We conclude that none of them have sufficient merit to justify further discussion, except for the contention that the Health and Welfare Fund of Local 166 was not "within the reach of the forfeiture clause of the International Union constitution".

The evidence in this case is that the Health and Welfare Fund of the Local 166 was always maintained as a separate and special fund and was kept in separate savings and checking accounts. In the annual audit reports of the local it was accounted for separately from its "general funds". It consisted solely of contributions by members of the local and was administered by trustees of the local solely for the benefit of sick and injured members of the local. It was never used for any other purpose and proposals to borrow from that fund for other uses were uniformly rejected. It was not one of the funds provided for or required by either the constitution of the International or the by-laws of the local, but was established as the result of a separate "referendum" vote of members of the local. In both a practical and legal sense, it was established and administered as a trust fund.

It is urged on behalf of the International that such a fund is still the "property" of the local union and, as such, is subject to the forfeiture clause providing that all "property" of a seceding local union shall revert to the International.

While such a result may appear to follow from a literal application of the forfeiture clause in this case, by far the majority of cases and authorities support the proposition that a special fund, raised for a purely local purpose, is not subject to the provisions of the constitution of an international union requiring a forfeiture to it of all "property" of a seceding local union. At least when such a special fund is a health and welfare fund for the benefit of sick and injured members of the local union, consisting solely of contributions by members of the local union, kept separate from all other funds, and used solely for such a purpose, as in this case, these authorities would hold that such a fund is not subject to forfeiture, but is in the nature of a trust fund, to be retained by the local union. See cases collected and cited in 23 ALR2d 1209, at 1217-18, and 58 Yale LJ 1171, at 1173-74. See also *Bradley v. O'Hare,* 11 AD2d 15, at 26, 202 NYS2d 141 (1960), cited by this court with approval in *Phillips v. Perrin, supra,* at 545.

The two cases cited by appellant as holding to the contrary are clearly not in point. *Liggett v. Koivunen,* 227 Minn 114, 34 NW2d 345 (1948) did not involve a dispute between an international union and a seceding local union and recognized that a separate health and welfare fund may be "impressed with a trust". The only other case cited by appellant on this point, *Building Service Employees International Union AFL-CIO v. University of Minnesota Employees Union,* 271 Minn 181, 135 NW2d 697 (1965), while upholding the forfeiture to an international union of the assets of a seceding local union, did not involve or discuss the question whether a separate health and accident fund would be included in such a forfeiture.

It is also contended on behalf of the International

that "the substantive character of the fund as an asset should control over its form" and that "any exception for assets which are separate only by label is an illogical distinction based on form, not substance". In this case, however, as previously pointed out, the Health and Welfare Fund of this local union is not only in "form" or by "label" a separate fund, but as a matter of "substance" is a separate trust fund for the benefit of sick and injured members of the local union.

By the same token, however, although such a special fund may be retained by the seceding union, it must still be maintained and administered as a separate health and welfare fund, in accordance with its original purpose, and may be used for no other purpose.

It follows that the decree and judgment of the lower court must be set aside and that this case must be remanded to the lower court for further proceedings in accordance with this opinion.

Modified.