WALTER KIDDE & COMPANY, INC., PLAINTIFF, v. UNITED
ELECTRICAL, RADIO & MACHINE WORKERS OF AMER-
ICA, CIO, AN UNINCORPORATED ASSOCIATION, DE-
FENDANT-APPELLANT, AND INTERNATIONAL UNION,
UNITED AUTOMOBILE, AIRCRAFT AND AGRICUL-
TURAL IMPLEMENT WORKERS OF AMERICA (UAW-
CIO), LOCAL 146 (FORMERLY KNOWN AS LOCAL 114),
AN UNINCORPORATED ASSOCIATION, DEFENDANT-
RESPONDENT.

Argued January 8, 1951—Reargued June 25, 1951—Decided
June 29, 1951.

*Mr. Morton Stavis* argued the cause for appellant. *Mr. William Rossmoore,* on the brief.

*Mr. Abraham L. Friedman* argued the cause for respondent. *Mr. Samuel L. Rothbard* on the brief. *Messrs. Rothbard, Harris & Oxfeld,* attorneys.

The opinion of the court was delivered by

HEHER, J. Plaintiff invoked the equitable remedy of interpleader; and there was an order on September 15, 1949, directing the payment of the fund in controversy into court, discharging the plaintiff, and ordering the adverse claimants to interplead. The subject matter is $2,167, union dues "checked off" by the plaintiff employer from the wages of its employees pursuant to a collective bargaining agreement between plaintiff and defendant United Electrical Radio & Machine Workers of America, CIO, (for convenience referred to as UE) and its local affiliate, Tool Die Makers and Machinists, Local 420 (referred to as UE 420), for the months of September, October and November, 1948. The fund is also claimed by the defendant International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (UAW-CIO) Local 146 (designated as UAW 146), now the collective bargaining agent of plaintiff's employees. These are unincorporated associations. Statements of claim and answers were filed by the contesting parties; and there was judgment awarding the fund to UAW Local 146. An appeal taken by the defendant UE to the Appellate Division of the Superior Court was certified here for decision on our own motion.

The Superior Court found that on September 16, 1948, UE Local 420, by valid and effective corporate action, disaffiliated from the parent UE and, not long thereafter, was chartered by UAW as Local 146, and that in consequence of these events the title to the fund in suit is now vested in the UAW local, notwithstanding provisions of UE's constitution for a continuance of the UE local while seven or more members so will, and for a transfer of the local's property to the UE parent body in the event of the local's disbandment.

UE local's membership was then about 500. The "day shift" and the "night shift" of the members had two separate meetings. The minutes show that the former group voted, 65 to 45, for disaffiliation, and that the latter group, 5 or 6 in number, opposed this course, but took no formal action on the proposal. The motion was that "Local 420 disaffiliate from UE." Thus, there was a vital decision by a relatively small proportion of the membership; and the question arises whether there was adequate notice and whether a matter of such moment is a proper subject for group action such as we have here. But we have no occasion to consider the point. For a more fundamental reason, the action taken was ineffective.

The issues are largely controlled by the principles governing contracts. Union membership derives from and depends upon the common consent of the parties, expressed in the constitution and laws of the association, and, while the law of contracts does not rule all its aspects, the relationship gives rise to interests of substance which the law will protect. Unless contrary to the public interest or the law of the land, the legal consequences of the compact are as stipulated by the parties; and thus in general the law treats the association as essentially contractual. *Harker v. McKissock*, decided June 18, 1951, 7 *N. J.* 323.

Local 420 was chartered June 5, 1937, as a constituent of UE. The local and its members voluntarily assumed the obligations of the constitution, rules and regulations of UE—these among others: Article 18, section N of UE's constitution, providing that "If a local disbands," all its funds and property "shall revert" to UE if within a year there is no application for a new charter by at least 15 former members of the defunct local; and section O of the same article providing that "Any disbandment, dissolution, secession or disaffiliation of any local shall be invalid and null and void if seven or more members indicate their desire to retain the local charter." This latter provision is challenged as contrary to public policy, but there is no specification

other than that it is "unrealistic" and "out of step with the practice of our day in the government of labor unions" to place the veto power in the hands of but a fraction of the membership. But the loyal-minority clause is common in such associations for the continued function of the local component, and is a measure in keeping with law and public policy. Compare *McFadden v. Murphy,* 149 *Mass.* 341, 21 *N. E.* 868 (1889); *Bacon v. Paradise,* 318 *Mass.* 649, 63 *N. E.* (2d) 571 (1945); *Local Union* 13,013 *v. Cikra,* 86 *Ohio App. Rep.* 41, 90 *N. E.* (2d) 154 (1949).

██ This, too, is the rationale of the doctrine that a provision for the transfer of the local's property to the parent body, in the event of the local's disbandment, does not constitute a penalty or forfeiture which the law will refuse to enforce. The elements of a penalty are wanting. The provision imposes no forfeiture for breach of the contract which in equity and right conscience is unenforceable. It is rather the exercise of the basic freedom of contract in an area of action that does not trench upon the public interest or private right and justice, and not the advance setting by the parties of damages for breach of the contract. Local 420 continued in existence after the purported disaffiliation until January, 1949, when it disbanded by appropriate corporate action, following the selection by plaintiff's employees of UAW as their collective bargaining representative at an election conducted by the National Labor Relations Board. Until disbandment, its identity remained unchanged. The turnover of Local's property to the parent UE was not a forfeiture or penalty in the obnoxious legal sense. It was in keeping with a fundamental stipulation of the parties that is not in conflict with law or policy. The members of UAW 146 were not members of UE 420 at the time of the latter's dissolution; and they have no interest whatever in the property of the dissolved UE local. This is axiomatic. The fund is not the subject of a true trust for the individual members. The ruling principles are declared in the cited case of *Harker v. McKissock.*

■ We find no basis in the record for the contention that the motivation for the action under review was the impairment of the local's representative functions by the failure of UE's officers to file the non-Communist affidavits required by the Federal Labor-Management Relations Act of 1947, and there is therefore no occasion to determine the impact of action so induced on the constitution and laws of the association. Indeed, we are not cited to anything in the record tending to show such omission by UE's officers. And the asserted expulsion of UE from CIO came on November 2, 1949, long after the action under review.

The judgment is reversed; and the cause is remanded with direction to enter judgment for appellant.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING and ACKERSON—5.

*For affirmance*—Justices CASE and OLIPHANT—2.