The BASSICK COMPANY, a Connecticut corporation, Plaintiff,

v.

BASSICK LOCAL 229, Affiliated With The International Union of Electrical, Radio and Machine Workers, C.I.O., a labor organization, Defendant.

Civ. A. No. 4639.

United States District Court
D. Connecticut.

Dec. 15, 1953.

On Motion to Compel Arbitration and to Stay Further Proceedings

Jan. 28, 1954.

Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for plaintiff.

Daniel Baker, Stamford, Conn., Everett E. Lewis, New York City, for defendant.

SMITH, Chief Judge.

■ This is a motion by defendant, Local 229, to quash the attachment made by the plaintiff, Bassick Company, pursuant to an order of this court dated November 18, 1953, of its bank account and of monies checked off from the wages of employees of the plaintiff. The action was brought by the plaintiff pursuant to Sec. 301 of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 185. Damages of $50,000 are sought for a work stoppage allegedly in violation of an existing contract between the plaintiff company and the defendant union.

Defendant seeks to quash the attachment on check-off monies as being harsh and oppressive in that without these funds for operating expenses, the union will be forced out of existence. It appeals to the equity power of the court for relief stating that as a going business "affected with a public interest", it merits special consideration in the face of the admittedly broad attachment powers under the Connecticut statutes.

See Sec. 8022 et seq., Conn.Gen.Stat. 1949 Rev.

The power to attach the property of a voluntary association is specifically granted under Sec. 8035 of the General Statutes which seems to negate defendant's assumption of being a privileged litigant here. Furthermore, it seems highly improbable that defendant could not raise all or some of the funds necessary for a release under bond either from the International Union with which it is affiliated or from any other source. Defendant might also move for reduction of the attachment order if it believes the value of the property attached far exceeds the apparent claim of the plaintiff. See Sec. 8052, Conn.Gen.Stat.1949 Rev. However, as far as the motion to quash is concerned, we are not cited to any authority which would justify an obvious disregard of the statutory law.

Defendant's legal theory for quashing carries little more weight. It claims that the monies checked off under the contract by the plaintiff company before payment over to the union is property belonging to the employees and thus not attachable as union property. It also claims that as to certain of the check-off monies it is only a trustee holding for payment of immediately owing per capita taxes to various affiliates. Were we to concede the validity of this argument, then defendant is hardly the party damaged and in a position to challenge the attachment here. Moreover, so far as appears, the check-off funds are properly attachable as property of the defendant. According to Exhibit A attached to the complaint, the contract between the company and the union, and the check-off authorizations refer only to dues and fees due from the employees to defendant union.

The motion to quash the attachment is denied.

## On Motion to Compel Arbitration and to Stay Further Proceedings

Plaintiff employer seeks to recover under The Labor Management Relations Act damages from defendant union, with which plaintiff has a collective bargaining contract, for claimed violation of a no strike clause.

Defendant union moves for an order compelling arbitration and for a stay of further proceedings in this action pending arbitration.

■ Arbitration both of the defendant's responsibility for the work stoppage and the amount of damage would be preferable to the resolution of these issues in this action. Absent agreement of the parties to submit to arbitration, however, it may not be ordered.

The contract between the parties provides for arbitration only in Article IV entitled Grievance Procedure, in Section 1, Step D.

■■ In the light of the opinions, both majority and dissenting, in the recent Markel case, Markel Electric Products, Inc., v. United Electrical, Radio & Machine Workers of America, U. E., 2 Cir., 202 F.2d 435, the contract cannot be read to bring the present dispute within the arbitration clause. It is true, as defendant points out, that there are some differences in wording between the Markel contract and the one in suit here. They are not sufficient, however, to indicate any intent by the parties to arbitrate questions of breach of the no strike no lockout provision. Here the clause is plainly only the fourth step of the grievance machinery set up to care for the disputes between employes or the union on their behalf and the company on the application and interpretation of the contract provisions as to wages, hours and working conditions, for the nature of the grievance procedure is obviously designed for the handling of such problems, on the complaint of employe or union, and not of such questions as we face here. Either party may ask arbitration if agreement is not reached on the third step, but this does not mean that the company may institute grievances. With the employe or union still dissatisfied after the third step, the company might well feel that labor man-

**780**

agement relations would be improved by submission of a dispute to arbitration. There is here, however, no separate article, general in nature, providing for arbitration outside the grievance procedure.

Since no agreement to arbitrate this dispute is found, we do not reach the question of its enforceability in the manner sought by the pending motion.

The motion to compel arbitration and to stay further proceedings pending arbitration is denied.