135 N.W.2d 697 (1965)
BUILDING SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, and Milton Murray, trustee, Appellants,
v.
UNIVERSITY OF MINNESOTA EMPLOYEES' UNION LOCAL 450, BSEIU, and David Y. Morris, et al., Respondents.
No. 39312.
Supreme Court of Minnesota.
May 14, 1965.
*698 Robins, Davis & Lyons, and George Latimer, St. Paul, for appellants.
Peterson, Bell & Converse, St. Paul, for respondents.
OTIS, Justice.
This is an action brought by plaintiff union, the International, to require defendant, the Local, to give recognition and effect to the appointment of a trustee over the Local's affairs. The issues concern the validity of the Local's disaffiliation and the right to its assets. The trial court ruled in favor of the Local on both questions.
It appears without dispute that the International gave the Local its charter in 1958 and subsequently furnished it financial support in a sum exceeding $10,500. Dissatisfaction between the Local and the International came to a head in 1962 when the Local claimed that the International wrongfully withheld a death gratuity to which the widow of a deceased member was entitled, failed adequately to assist in organizing building employees at the University of Minnesota, and refused to reimburse it for discharging another local's obligations. Under the terms of the International's constitution, a monthly per capita assessment of 70¢ a member was due from the Local. Payment for the months of May and June 1962 became delinquent, as a result of which the International notified the Local by a letter dated July 31, 1962, that pursuant to Article XII of the constitution the Local was suspended, adding the following admonition:
"You are further advised that failure to pay up all indebtedness to the International Union within one month after the date of this letter will cause the charter of your Local Union to be revoked.
"I trust that you will take such steps as are necessary to put your Local Union in good standing and avoid revocation of the charter."
On August 31, 1962, the Local paid its arrearage for May but thereafter no additional assessments were forwarded to the International.
In anticipation of a meeting to be held on November 7, 1962, notice was posted in the customary manner on bulletin boards at the University of Minnesota directing the members' attention to the following:
"A vote will be taken up at this meeting concerning our disaffiliation with Building Service Employees' International Union."
Although a decision to disaffiliate was thereupon adopted, the president thereafter directed that there be another vote at the next membership meeting and gave notice to that effect in a letter which contained, among other things, the following statement:
"A voice vote was taken at the regular membership meeting on November 7, 1962, to accept the suspension and disaffiliate from Building Service Employees' International Union.

*699 "Insofar as there was a light turnout of members at the November 7th membership meeting, the members present voted to include a resolution to allow the members to cast a secret ballot on the disaffiliation with Building Service Employees' International Union on the ballot of the election of officers to be held on December 5, 1962."
About a week prior to the December 5 meeting, an additional notice of the proposed vote on disaffiliation was sent to the membership, and at that election the following resolution was adopted by a vote of 59 to 5:
"That Local 450 accepts the suspension as imposed by the International from the Building Service Employes' International Union, AFL-CIO and that the officers and all other representatives be directed to take all necessary steps to carry out the mandate of this Resolution, including whatever steps are necessary to protect and preserve the monies and properties of the members."
On December 7, 1962, the president of the Local wrote the president of the International stating that the Local had severed its affiliation. It formally surrendered its charter on March 15, 1963. The International responded by declining to accept disaffiliation and by appointing a trustee to take over the Local's affairs.
1. In support of its contention that the Local's disaffiliation was ineffective, the International asserts, first, that the vote taken by the Local was on the question of "suspension" and not "disaffiliation"; and second, that the International had proof there were still seven dissenting members, which, under the terms of the International constitution, prevented disaffiliation.
While it is true that the resolution itself referred to an acceptance of the "suspension" rather than "disaffiliation," notices which preceded the two elections expressly referred to the Local's contemplated action as one involving disaffiliation as well. There is no evidence that anyone was actually misled by use of the word "suspension," and we are of the opinion that read together the notices made the purpose of the election clear. There being no specific provision in the International constitution for the procedure to be followed in disaffiliating, we hold that the steps taken were adequate for that purpose.
2. Only 64 votes were counted at the December 5 election out of a total membership of approximately four hundred. The plaintiff union has submitted a statement from 28 members expressing preference for a continued affiliation with the International. Under these circumstances, it asserts the constitution prohibits disaffiliation. We do not agree. The membership had two opportunities to vote on that issue and will not now be heard to complain if they did not avail themselves of the right to express their views at the time and place designated for that purpose.[1] We have in addition considered and find without merit the International's contention that the election was ineffective because of inadequate membership lists and the Local's inability to produce a constitution and bylaws governing its affairs.
3. Article XXII of the International constitution has the following provision:
"* * * In the event of secession, dissolution or disaffiliation, all properties, funds and assets, both real and personal, of such Local Union or Joint Council shall become the property of the International Union."
It is the position of the Local that this article is unenforceable because the International has been guilty of breaching a duty which constituted an implied condition *700 of the contract created by acceptance of the International's constitution. The particular violations about which the Local complains involve the failure of the International to provide organizers and to pay the death benefit referred to above. The constitution expressly provides, however, that the president shall appoint organizers "as he deems necessary," and the death gratuity is to be paid "only when the International Union, in its discretion, desires to make the payment." Under these circumstances, we find no breach of the kind which would justify the Local's ignoring the provisions of Article XXII, and therefore hold that it governs the rights of the parties to these proceedings.
There is authority in other jurisdictions based on broad equitable principles permitting a local to retain its property notwithstanding a provision similar to that contained in Article XXII.[2] In this state we have consistently recognized the constitution of an international as being the contract which governs its relationship with locals. Liggett v. Koivunen, 227 Minn. 114, 120, 34 N.W.2d 345, 349.[3] We condoned the local's retention of its own assets on disaffiliation in Local 1140 v. United Electrical, R. & M. Workers, 232 Minn. 217, 45 N.W.2d 408, 23 A.L.R.2d 1197, and held that the parent union's affiliation with the CIO was such a fundamental condition in inducing the local to accept its charter that the severance of ties between the international and the CIO relieved the local of its obligations under the international's constitution. This is not such a case, however, and we therefore hold that under well-settled principles it was error for the trial court to permit the Local to retain title to its assets. The matter is therefore reversed and remanded with directions that the trial court retain jurisdiction, secure an accounting of the property owned by the Local on the date of disaffiliation, require the Local to produce whatever assets were owned by it on that date, and supervise the transfer of such assets to the International.
Reversed with directions.
NOTES
[1] Crawford v. Newman, 13 Misc.2d 198, 201, 175 N.Y.S.2d 903, 906.
[2] Hayes v. Relyea, 43 Misc.2d 295, 251 N.Y.S.2d 180, affirmed 21 A.D.2d 926, 252 N.Y.S.2d 423. But see, Harker v. McKissock, 7 N.J. 323, 81 A.2d 480; Bradley v. O'Hare, 11 A.D.2d 15, 202 N.Y.S.2d 141; Walter Kidde & Co. Inc. v. United Electrical, R. & M. Workers, 7 N.J. 528, 82 A.2d 184; Edwards v. Leopoldi, 20 N.J.Super. 43, 89 A.2d 264; Grand Lodge, etc. v. Girard Lodge No. 100, 384 Pa. 248, 120 A.2d 523; Pennsylvania State Camp v. Washington Camp No. 135, 385 Pa. 492, 123 A.2d 701; Annotation, 23 A.L.R.2d 1209.
[3] Rose, Relationship of the Local Union to the International Organization, 38 Va. L.Rev. 843, 851.