AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, LOCAL 1816, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

No. 82–4334.

United States Court of Appeals, Fifth Circuit.

Sept. 23, 1983.

James R. Rosa, Mark D. Roth, Washington, D.C., for petitioner.

Steven H. Svartz, Acting Sol., William R. Tobey, Federal Labor Relations Authority, Washington, D.C., for respondent.

Before CLARK, Chief Judge, GOLDBERG and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Local 1816 of the American Federation of Government Employees, AFL–CIO, peti-

tions for review of a decision and order of the Federal Labor Relations Authority (FLRA) holding that Goodfellow Air Force Base (Goodfellow) did not commit an unfair labor practice by either terminating an employee's written dues deduction authorization three years after her promotion out of the collective bargaining unit into a supervisory position, or by recouping an amount equal to the total sum improperly deducted and remitted to the union on behalf of the employee from a subsequent, bi-weekly payment of dues deductions from other employees. *Department of the Air Force, 3480th Air Base Group, Goodfellow Air Force Base, Texas and American Federation of Government Employees, AFL–CIO, Local 1816,* 9 F.L.R.A. No. 48 (1982). Specifically at issue on this appeal is whether the Air Force's method of recoupment of dues mistakenly withheld from an employee's wages and paid to the union violates 5 U.S.C. § 7115, thereby constituting an unfair labor practice within the intendment of 5 U.S.C. § 7116. Because the basis for the FLRA's decision is contrary to law, we grant the union's petition for review and set the decision aside.

## Factual and Procedural Background

■ Although the legal issue is sharply contested, the facts giving rise to this controversy are not in dispute. Local 1816 is the exclusive representative for civilian, non-supervisory employees in the bargaining unit of Goodfellow A.F.B., Texas. These employees are covered by Title VII of the Civil Service Reform Act of 1978 (Act), 5 U.S.C. §§ 7101–7135.[1] Section 7115(a) of the Act compels a federal agency which "has received from an employee in an appropriate unit a written assignment which authorizes the agency to deduct from the pay of the employee amounts for payment of regular and periodic dues of the exclusive representative of the unit . . . [to] honor the assignment and make an appropriate allotment pursuant to the assignment." An agency's obligation under § 7115(a) terminates when the collective bargaining agreement between the exclusive representative and that agency ceases to apply to a particular employee, or "the employee is suspended or expelled from membership in the exclusive representative." 5 U.S.C. § 7115(b). Failure to abide by § 7115, or any other provision of the Act, is an unfair labor practice under § 7116(a).[2]

Pursuant to Article XXI of the collective bargaining agreement between Local 1816 and Goodfellow, only non-supervisory employees were entitled to the benefits of the payroll deduction mechanism whereby management, during the relevant period, withheld and remitted union membership dues for those employees who had executed the

1. Title VII of the Civil Service Reform Act of 1978, known as the Federal Labor-Management Relations Act, codifies the labor relations program of the Federal Civil Service. Congress sought, in adopting the Act,

> to strengthen federal management's control over hiring and firing of employees, and simultaneously to buttress the status of employee unions in the federal sector. In recognition of these goals, the Act declares that the public interest is served both by higher standards of employees performance and by collective bargaining in the civil service.

*National Treasury Employees Union v. FLRA,* 691 F.2d 553, 554 (D.C.Cir.1982) (footnotes omitted). Congress established the FLRA, an independent bipartisan agency within the Executive Branch modeled on the National Labor Relations Board, to construe and implement Title VII of the Act. Like the NLRB, the FLRA has been invested with both rulemaking and adjudicatory powers, and may determine ap-

propriate units for labor organization and bargaining, conduct representation elections, adjudicate unfair labor practices, and resolve exceptions to arbitration awards. *Id.; Department of Defense, Army-Air Force Exchange v. FLRA,* 659 F.2d 1140, 1144 (D.C.Cir.1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).

2. Section 7116(a) recites in pertinent part:

> For the purpose of this Chapter, it shall be an unfair labor practice for an agency—
> (1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;
>
> \*     \*     \*     \*     \*     \*
>
> (5) to refuse to consult or negotiate in good faith with a labor organization as required by this chapter;
>
> \*     \*     \*     \*     \*     \*
>
> (8) to otherwise fail or refuse to comply with any provision of this chapter.

proper dues allotment form.[3] Supervisors could hold union membership, but they were not included in the bargaining unit and were required to pay dues directly to the union. Local 1816 does not challenge the FLRA's construction of § 7115 as militating against the perpetuation of a dues assignment once an employee has achieved supervisory status through promotion.[4]

Goodfellow hired Ovida Brown as a civilian clerk in 1976. As a member of the collective bargaining unit, Brown authorized the employer to deduct union dues from her bi-weekly wages in accordance with the labor contract. Notwithstanding her promotion to supervisor and resultant departure from the unit in October of 1976, the agency continued to withhold Brown's dues and remit them to Local 1816. Goodfellow's Civilian Pay Office did not invoke the contractual procedure for termination of the allotment, nor did Brown relinquish her union membership or attempt to cancel her authorization in the manner prescribed by the labor contract. Given its receipt of a monthly listing of employee promotions, the union was presumably aware of Brown's change of status. It nonetheless failed to advise the payroll office of this occurrence.

At some point in July or August of 1977, Brown informed the union's secretary-treasurer that she wished to revoke her dues authorization. Relying on the latter's erroneous advice that the authorization could not be rescinded until September of that year, Brown deferred action. Upon realizing, once the supposed time for withdrawal had expired, that she had forgotten to notify either the payroll office or the union of her intent to curtail her dues assignment, and under the impression that she could not do so until the following September, Brown allowed the matter to lapse. She was therefore still a union member in April of 1979, when, after being told during a personnel training course that she could claim recoupment of all monies deducted since her October 1976 promotion, she sought a refund from Goodfellow.

Acting on Brown's written request, the agency terminated the dues check-off arrangement, calculated that $172.95 had been erroneously deducted from her salary and reduced the total employee dues remittance for the pay period ending April 14, 1979 by that amount. Brown was reimbursed that amount. The $172.95 paid to Brown was taken from payroll funds set

3. Article XXI, section 6 of the contract prescribed the method for management's remittance of dues withheld:

> The Civilian Pay Office will prepare a bi-weekly remittance check at the close of each pay period for the total amount allotted for dues for that pay period, less the administrative cost of two cents for each allotment made. The check will be mailed to the President, Lodge 1816, AFGE, with a listing of the names and the amount withheld.

Under section 5 of this Article, Goodfellow's Civilian Pay Office was obliged to:

> A. ... terminate an allotment when:
> 1. The employee leaves the unit as the result of any type of separation, transfer or other personnel action (except temporary promotion or detail).
> 2. The union loses exclusive recognition.
> 3. The Memorandum of Agreement is suspended or terminated by appropriate authority of the Department of Defense.
> 4. The employee revokes his allotment by notification to the Civilian Pay Office. The revocation will become effective the first full pay period following 1 March or 1 September, whichever date first occurs af-

ter the request is received in the Civilian Pay Office. The revocation may be made on Standard Form 1188, available in the Civilian Pay Office.

> \*   \*   \*   \*   \*   \*

> C. ... send a copy of each written revocation of voluntary authorization for allotment of compensation for payment of dues to the Union with the remittance for the first deduction payroll prepared after receipt of the revocation.

4. Both in *Internal Revenue Service, Fresno Service Center, Fresno, California and National Treasury Employees' Union*, 7 F.L.R.A. No. 54 (1981), and the case at bar, the FLRA has taken the position that where an employee is promoted to a supervisory position outside the bargaining unit, the "agreement between the agency and the exclusive representative ceases to be applicable ..." to that employee, § 7115(b), thereby effectuating the termination of his or her dues allotment by operation of law. Hence the failure to honor a dues assignment following promotion cannot, in the FLRA's estimation, be deemed an unfair labor practice under § 7116.

aside by Goodfellow in compliance with the dues allotments of other employees. Some of the employees wages thus redirected had been earmarked by Local 1816 for use at the local level; the balance was reserved for payments both to the union's group insurance carrier and to the parent organization for per capita fees.

Upon Goodfellow's refusal to reimburse the union, the latter filed an unfair labor practice charge with the FLRA. 5 U.S.C. § 7118. The FLRA regional office issued a complaint, and the matter was heard by an administrative law judge. In a decision dated July 13, 1982, the FLRA adopted the ALJ's recommendation that the complaint be dismissed. Reasoning that § 7115(b) forbade the deduction of Brown's dues after she left the unit as a consequence of her promotion, the FLRA concluded that the agency had acted appropriately in suspending further dues payments on her behalf. As previously noted, the union does not take issue with this conclusion.

Local 1816 nonetheless offers vigorous objection to the FLRA's determination that Goodfellow did not commit an unfair labor practice by recouping, from a dues allotment check forwarded to the union, the $172.95 disbursed to Brown in repayment of dues improperly withheld from her salary. Since the agency was required by § 7115(b) to terminate Brown's dues assignment, the FLRA opined that "management's correc-

tion of an administrative error in order to comply with ... [this] statutory mandate, albeit belatedly, cannot constitute a violation of the Statute." Observing that the ALJ had arrived at the same result by reference to judicial and administrative rulings which predated the January 1979 effective date of the Act, the FLRA held that such rulings were dispositive of Local 1816's statutory claim.[5] The union thereafter petitioned this court under 5 U.S.C. § 7123(a) for review of the FLRA's adverse decision, contending that it erroneously applied pre-Act precedent or, in the alternative, incorrectly construed the plain language of the Act.

### Standard of Review

Judicial review of FLRA decisions is governed by § 706 of the Administrative Procedure Act, 5 U.S.C. § 706. 5 U.S.C. § 7123(c). Section 706(2)(A), in turn, provides that agency action must be set aside where found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." In evaluating the FLRA's interpretation of § 7115 under this standard, we must adhere to the familiar "'principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong.'" *National Federation of Federal Employees, Local 1451 v. FLRA,* 652 F.2d 191, 193 (D.C.Cir.

---

**5.** The ALJ expressly relied on two decisions which preceded the enactment of the Civil Service Reform Act of 1978: *Lodge 2424, International Association of Machinists and Aerospace Workers, AFL–CIO v. United States,* 215 Ct.Cl. 125, 564 F.2d 66 (1977) (upholding United States Comptroller General's decision approving federal agency's set-off of illegally-deducted dues, reported at 54 Comp.Gen. 921 (1975)); *Headquarters, XVIII Airborne Corps and Fort Bragg and American Federation of Government Employees, Local 1770, AFL–CIO,* 6 FLRC 93 (1978) (opinion of FLRA's predecessor, Federal Labor Relations Council, deferring to Comptroller General's ruling in 54 Comp.Gen. 921 (1975)). While finding that these decisions had not been superseded by the Act, neither the ALJ nor the FLRA considered the impact of the Comptroller General's modification of his prior opinion in *In re: Recoupment of Union Dues— Fort Stewart/Hunter Army Airfield,* File No.

B–180095 (September 8, 1980). Citing an unpublished decision wherein a federal district court issued a preliminary injunction restraining the government employer, on equitable grounds, from recovering erroneously deducted allotments corresponding to the dues of employees who were promoted out of the bargaining unit but remained union members, *American Federation of Government Employees Local 1858 (AFL–CIO) v. Alexander,* Civil No. 78–W–5023–NE (N.D.Ala.1978), the Comptroller General concluded that the Army was not obligated to refund improperly withheld dues to newly-promoted supervisory employees where the latter had failed to provide timely notice that their allotments should be cancelled. For this reason, the Comptroller General determined that the employer need not recoup such dues from current allotment checks disbursed to the union.

1981) (*quoting from Miller v. Youakim,* 440 U.S. 125, 145 n. 25, 99 S.Ct. 957, 969 n. 25, 59 L.Ed.2d 194 (1979)). *Accord, Veterans Administration Medical Center v. FLRA,* 675 F.2d 260 (11th Cir.1982). Inasmuch as Congress has entrusted the FLRA with the administration of Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. § 7105(a)(1), its reading of the statute must be sustained if there exists a rational basis therefor. *See United States Department of Agriculture v. FLRA,* 691 F.2d 1242 (8th Cir.1982), *National Treasury Employees' Union v. FLRA,* 691 F.2d 553 (D.C.Cir. 1982); *Internal Revenue Service v. FLRA,* 671 F.2d 560 (D.C.Cir.1982).

■ It must be emphasized, however, that this deferential standard of review does not compel summary affirmance of all FLRA decisions. Where, as in the instant case, the issue turns on statutory interpretation:

> "The construction put on a statute by the agency charged with administering it is entitled to deference by the courts, and ordinarily that construction will be affirmed if it has a 'reasonable basis in law.' . . . . But the courts are the final authorities on issues of statutory construction, . . . and 'are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate a congressional policy underlying a statute.' " . . . .

*United States Department of Agriculture v. FLRA,* 691 F.2d at 1247 (*quoting from SEC v. Sloan,* 436 U.S. 103, 118, 98 S.Ct. 1702, 1711, 56 L.Ed.2d 148 (1978)). Hence if the text or legislative history of the Act are at odds with the FLRA's interpretation, this inconsistency is sufficient to overcome the deference generally accorded an agency's interpretation of its enabling statute. *American Federation of Government Employees v. FLRA,* 702 F.2d 1183 (D.C.Cir. 1983). *See also National Federation of Federal Employees, Local 1451 v. FLRA,* 652 F.2d at 193 (suggesting, in *dictum,* that special scrutiny of an FLRA decision may be required "where [as in the case at bar] a petitioner alleges that the FLRA has simply followed old practices and not adopted the revised mandates of the CSRA").

### Interpretation and Application of 5 U.S.C. § 7115

There is no dispute that both § 7115(b) and the collective bargaining agreement between Goodfellow and Local 1816 required the termination of Brown's dues assignment upon her promotion. Hence we focus solely on the propriety of Goodfellow's recovery of the amount inadvertently paid on behalf of Brown from the dues withheld from other union members within the bargaining unit. Albeit in agreement with the FLRA's basic premise that Brown's obligation to Local 1816 was discharged in a manner expressly prohibited by Congress, we cannot accept its conclusion that Goodfellow's method of recoupment comported with § 7115.

■ Nothing in the plain language of § 7115 or its legislative history justifies Goodfellow's resort to a "self-help" method of recoupment. Section 7115(a) instead imposes an affirmative duty on a federal agency to honor the current assignments of unit employees by remitting regular and periodic dues deducted from their accrued salaries to their exclusive representative. Until the funds thus deducted are delivered to the union, they remain the property of the particular members from whose earned wages they are taken. By applying a portion of the pay of unit employees to extinguish the debt owed another, Goodfellow abrogated its statutory duty to the former. Contrary to the FLRA's opinion, therefore, the rationale of pre-Act jurisprudence essentially fashioned by the Comptroller General, see footnote 5, *supra,* cannot be reconciled with the controlling statute.

■ That the union members whose dues were wrongfully appropriated were not in imminent danger of expulsion or suspension as a result of nonpayment is irrelevant. Nor do the nature and extent of the benefits inuring to Brown through her uninterrupted enrollment in Local 1816 after her promotion figure in the statutory equation; we are not concerned here with the union's

entitlement to Brown's dues. We look only to the method of recoupment. Finally, it is unnecessary for us to address the dual question of the Air Force's responsibility to reimburse Brown for sums mistakenly deducted, and her right to receive these sums despite her union status. Though we recognize the government employer's prerogative "to recover by offset or otherwise sums illegally or erroneously paid," *Lodge 2424, International Association of Machinists and Aerospace Workers, AFL–CIO v. United States,* 215 Ct.Cl. 125, 564 F.2d 66, 71 (1977), the fact remains that the monies against which it effected a set-off belonged to innocent third parties, with the employer's only interest at the time of allotment being the transmittal of such monies to Local 1816. Having thus impinged upon employee protections secured by § 7115(a), Goodfellow's conduct falls within the ambit of §§ 7116(a)(1) and (8).

Petition for review GRANTED.