LOCAL UNION 13013, DISTRICT 50, U. M. W., ET AL., APPELLANTS, v. CIKRA ET AL., APPELLEES.

(No. 4011—Decided August 3, 1949.)

*Messrs. Smoyer & Smoyer,* for appellants.

*Messrs. Smoot & Riemer,* for appellees Alder Cikra et al.

*Messrs. Brouse, McDowell, May, Bierce & Wortman,* for appellee Pittsburgh Plate Glass Company.

HUNSICKER, J.   This is an appeal on questions of law and fact from a judgment of the Court of Common Pleas of Summit County, Ohio, which denied the plaintiffs, Local Union 13013, District 50, United Mine Workers of America, et al., herein called Local 13013, an injunction and accounting against defendants Local No. 1, Allied Chemical and Alkali Workers of America, et al., herein called Local 1.   The judgment also awarded, to Local 1, money, property and other assets, held by certain of the defendants as trustees for Local 1.

In 1933, the employees of Pittsburgh Plate Glass Company, Columbia Chemical Division, of Barberton, Ohio, were members of a local union affiliated with the American Federation of Labor.   In 1937, the local union affiliated with District 50, United Mine Workers

of America, and became known as Local 13013, of that organization. Said local had a contract with the employer company as bargaining agent for the hourly-rated employees.

Differences arose between the membership of Local 13013 and its parent organization, District 50, United Mine Workers of America. On August 1, 1948, the executive board of Local 13013, pursuant to proper request, called a special meeting of the membership of Local 13013 for August 7, 1948. Notice of this special meeting was given by posting the information on the windows and bulletin board of Local 13013, the bulletin boards of the employer company, and by newspaper and radio comment. Such notices and all information by newspaper and radio stated that there would be a meeting of Local 13013, of vital importance, on Saturday, August 7, 1948, at Local 13013 Hall, 915 Wooster Road, West, Barberton, Ohio. Out of the total of approximately 1400 members of Local 13013, five hundred twenty-six members attended this meeting. Of those who did not attend, approximately four hundred were working in the employer company plants, during the hours when the meeting was in progress.

The members of Local 13013 present at the meeting of August 7, 1948, voted to separate from District 50, United Mine Workers of America, and to transfer all money, assets and property, which had been acquired from the dues paid by members of Local 13013, to some of those present, in trust for the benefit of a new local union. The persons there present then voted to form Local 1. All the action taken at this meeting of August 7, 1948, was by the unanimous vote of all persons there present. No one at such meeting made any dissent to any action there taken. The charter and certain papers of Local 13013 were thereafter returned to the officers of District 50, United Mine Workers.

The contract that existed between Local 13013 and the employer company was, by supplemental agreement between the company and Local 1, made effective between the employer company and Local 1.

Fifty-eight members of Local 13013 paid dues for the month of August, 1948, but these payments were made prior to the meeting of August 7, 1948. After August 7, 1948, union dues paid by employees of the company were paid to Local 1. All hourly-rated employees of the company became members of Local 1. Approximately eighteen such employees are also members of a revitalized Local 13013, which began to hold regular meetings in March, 1949. Dues are paid to the revitalized Local 13013 by its present members, although no dues were paid to such Local 13013 until more than three months after August 7, 1948. The dues so paid were for the purpose of attempting to reinstate and place in good standing these approximately eighteen members, for the month of August, 1948, and thereafter.

Mr. Wantling, Regional Director of District 50, United Mine Workers of America, was named by the chief officer of said organization as temporary administrator of Local 13013. He demanded of the former officers of Local 13013, who are filling the same offices in Local 1, that all money, property and other assets which had been transferred from Local 13013 to the trustees of Local 1, be given to him as temporary administrator and lawful representative of Local 13013. The refusal of this demand resulted in this action for injunction and accounting being filed in the Court of Common Pleas.

The principal question to be answered is, To whom do the assets and property of Local 13013, owned by said Local, as of August 7, 1948, belong? Incidental questions that need to be answered are, What was the

effect of the action taken at the special meeting of August 7, 1948? Was there a total disaffiliation of Local 13013, or merely a secession of a majority, which left Local 13013 as a continuing organization?

Pertinent portions of the constitution of International Union, United Mine Workers of America, a plaintiff below and an appellant in this court, in effect as of August 7, 1948, are as follows:

Section 2 of Article XIV:

"No applicant for membership in the United Mine Workers of America shall be regarded as being a member in good standing until the full amount of his initiation fee has been paid or a check-off order authorizing the collection of the same has been filed in or through the Local Union where application for membership is made, and the obligation has been administered, except in case the applicant has religious scruples against taking the obligation. In such case the obligation shall be waived, providing the applicant gives notice of his objections to taking the obligation at the time his application for membership is filed. In all cases applicants for membership must pay dues and assessments for the month during which they start to work.

"Operators' commissioners, persons engaged in the sale of intoxicating liquors and members of the Civic Federation shall not be eligible for membership. The International Executive Board may, in its discretion, provide rules and regulations upon which supervisory and other employes may be admitted to membership.

"Any member accepting membership in the Industrial Workers of the World, the Working Class Union, the One Big Union, or any other dual organization, or membership in the National Chamber of Commerce, or the Ku Klux Klan, or the Communist Party, or Fascist, Nazi or Bund organizations, shall be expelled from the United Mine Workers of America, and is per-

manently debarred from holding office in the United Mine Workers of America, and no members of such organization shall be permitted to have membership in our Union unless they forfeit their membership in the dual organization immediately upon securing membership in the United Mine Workers of America. Any member of the United Mine Workers of America who accepts office in any dual organization shall be permanently expelled from the United Mine Workers of America, unless reinstated by the International Executive Board.''

Section 11 of Article XIV:

''Any member becoming three months in arrears for dues or assessments, unless officially exonerated from the payment of same, shall forfeit his membership and can be reinstated only by paying an initiation fee and such other penalties as may be imposed by the District in which application for membership is made.''

Applicable sections of the rules of District 50, United Mine Workers of America, another plaintiff below and appellant in this court, in effect as of August 7, 1948, are:

Section 3 of Article IV:

''Local unions shall be composed of ten, or more, members engaged in occupations within the jurisdiction of the District. Seven members shall constitute a quorum for the convening of a local union meeting or the transaction of business thereat.''

Section 4 of Article IV:

''Any member becoming three months in arrears in dues or assessments, unless officially exonerated from payment of the same, shall forfeit his or her membership, and can be reinstated only by the payment of an initiation fee and such other penalties as may be imposed by the local union, subject to the approval of the Administrative Officer of the District.''

Section 5 of Article IV:

"Any member accepting membership in the Industrial Workers of the World, the Working Class Union, the One Big Union, or any other dual organization, or membership in the National Chamber of Commerce, or the Ku Klux Klan, or the Communist Party, or Fascist, Nazi or Bund organizations, shall be expelled from the United Mine Workers of America, and is permanently debarred from holding office in the United Mine Workers of America, and no member or any such organization shall be permitted to have membership in our Union unless they forfeit their membership in the dual organization immediately upon securing membership in the United Mine Workers of America. * * *."

Section 12 of Article IV:

"Should the Local Union for any cause dissolve, disband, or surrender its charter or should its charter be revoked, the charter and all moneys, supplies and property, including real estate shall be taken over by the International Union, provided the rights and interests of all members of such Local Union in good standing shall be fully protected. No Local Union shall be allowed, for any reason or purpose, to divide its funds among its members. * * *."

And Section 3 of Article II of the bylaws of Local 13013, is:

"Special meetings may be called upon the decision of a majority of the officers or upon the request of a duly accredited District 50 representative. Notice of the special meeting shall be published and posted at least 48 hours in advance of the meeting. The special meeting may consider only matters listed in the call for the meeting. Emergency meetings at which no matters will be voted upon, such as to hear noted speakers, national union, officials, etc., may be held at

the call of the Local Union president or a duly accredited District 50 representative.''

We recognize, as a general rule, that a majority of the members of an association may not, as against a dissenting minority who remain faithful to the association, dissolve the association and transfer the assets of the association to a new organization composed of the majority members. *Henry* v. *Cox*, 25 Ohio App., 487, 159 N. E., 101; 7 Corpus Juris Secundum, Associations, Section 9 a (4).

The contention, however, herein, by Local 1 and the other appellees, as former officers of Local 13013 and present officers of Local 1, is that, where there is a unanimous consent of the members of a local union, at a properly-called meeting of such local union, there can be a complete severance of the ties which bind the local organization to the national body, and that the money and other property of the local body, which is a trust fund, that belongs to the members of the local, notwithstanding its affiliation with a national body, may be then transferred to a new local body composed of the same members, whose objects and purposes are the same as that of the dissolved local union.

Until the time when union organizations increased in number, there was very little litigation on this subject. Even now, the majority of case law on the subject of ownership of association property in the event of internal dissention, concerns the dissolution of religious or fraternal organizations. We have been unable to find any Ohio case law on the question of a local union's right to withdraw from its affiliation with a national or international labor organization, and what effect such withdrawal has on the money and property of the local union.

Two views on the problem involved herein are found in the reported cases. One view, represented by the

case of *Low* v. *Harris*, 90 F. (2d), 783, tends to sustain the appellants' contentions. The other view, represented by the case of *International Union* v. *Becherer*, 142 N. J. Eq., 561, 61 A. (2d), 16, supports the claims of the appellees.

All the authorities agree, however, that, where there is a withdrawal by a majority of the members of a local union which leaves a minority membership able and willing to carry on the local union activities, there then can be no transfer of the assets by the majority group to itself. The money and property follow the group which continues to function as the original local union. *Low* v. *Harris, supra; International Union* v. *Becherer, supra.*

The constitution, bylaws and charter of a labor union constitute a contract between the members, which the courts will enforce. 31 American Jurisprudence, Labor, Section 43; *DeMille* v. *Am. Fed. of Radio Artists*, 31 Cal. (2d), 139, 175 A. L. R., 382, 187 P. (2d), 769, and authorities there cited.

Such constitution, bylaws and charter also constitute a contract which regulates the relationship between the parent organization and its subordinate bodies. *Bridgeport Brass Workers Union* v. *Smith* (1948), 15 Conn. Sup., 505, 15 Labor Cases 74,530, at p. 74,533; and cases there cited.

The rights, therefore, in the instant case, of the members of Local 13013 to disaffiliate or withdraw from the parent organization, and to form a new local, will depend upon the provisions of the contract and the construction to be placed thereon.

The contract, as the evidence discloses herein, is the constitution of the International Union, United Mine Workers of America, and the rules of District 50, United Mine Workers of America, effective as of August 7, 1948.

A careful reading of such constitution and bylaws—pertinent portions of which are set forth above—discloses no provision for disaffiliation of a local union from the international organization. There is a provision to prevent a local union from dividing its assets among the local membership, but such action was not attempted in the instant case.

There was, herein, no disbanding or dissolving of the local union in the sense of separating the body into its component individuals. On the contrary, we have a local union withdrawing from affiliation with a nation-wide association, and, still remaining an entity, maintaining itself as a local union group for the same purposes and to the same end as it was when a part of the larger body.

Under the facts as we find them to exist, there is no contractual provision which prohibits a unanimous withdrawal by the local union. We must therefore look to such substantive law as is available, to determine the rights of such local union to control and determine the status of its own property.

Title to and the right of possession of the personal property and money sought to be recovered by appellants herein, was at all times in the local union; that is, in the members of such local unit jointly, never in the parent body. The title and right of possession remains in such membership until, by proper action of the body, it is transferred elsewhere. Wrightington, Unincorporated Associations and Business Trusts (Second Ed.), Section 60, at p. 351 *et seq*.

The parent body provided none of these funds, nor did it collect the monthly dues paid by the members of the local union. All dues were paid to the local, and, from such dues, the per capita tax levied by the international body, was transmitted by the local to the parent organization.

The reasoning and conclusion reached by the Court of Chancery of New Jersey in the case of *International Union* v. *Becherer*, 142 N. J. Eq., 561, 61 A. (2d), 16, we think is persuasive in the matter before us. The analogy between that case and the instant case is apparent from a reading of that opinion. The first three paragraphs of the syllabus (by the court) of the New Jersey case are as follows:

"1. A local labor union, affiliating itself with a national or international organization composed of local unions, does not by such affiliation lose its character as a separate and distinct voluntary association. By such affiliation it does not become an indivisible and inseparable part of the larger organization and it may, at will, withdraw from that organization.

"2. A local labor union, affiliating itself with a national or international organization of local unions, does not by the act of affiliation surrender its property rights or create in the larger organization any right in the property or funds of the local union. For its claim to the per capita tax called for by the charter granted by the larger body to the local union, the former possesses but a mere money demand and no title or interest in the property of the local union.

"3. The facts here examined and found to show that Local Union No. 2 was an unincorporated voluntary association affiliated with the International Union, which, in turn, is affiliated with the C. I. O. *Held* that the Local Union could withdraw from its affiliation with the International and was free to create a new and different affiliation, and that the accumulated property and funds of the Local Union, contributed by its own members, constitute a trust fund held by the officers of the Local Union for the use and benefit of the members thereof."

We therefore find that:

1. All money and property involved herein as of August 7, 1948, belonged to the members of Local 13013.

2. The meeting of the membership of Local 13013 on August 7, 1948, was properly called to determine the future existence of Local 13013.

3. By unanimous consent of all members of Local 13013 present at the meeting, proper action was taken to withdraw from affiliation with the international organization.

4. No dissent or objection was made to such withdrawal by any member of Local 13013, until more than sufficient time had elapsed for all members of Local 13013 to forfeit all allegiance to the international body.

5. The members of Local 13013 had a right to withdraw as a unit from the parent organization.

6. Local 13013, by its action causing a severance of its ties with the international body, did not lose title to or right of possession of its money and other property.

7. Local 13013, by unanimous consent of its members, had a right to transfer its assets to Local 1.

8. Local 1, as a voluntary unincorporated association, is the rightful owner of the money and other property involved in the instant case.

The injunction and accounting are denied to the appellants.

A decree may be prepared in accordance with this finding and opinion, at the costs of the appellants.

*Decree accordingly.*

STEVENS, P. J., and DOYLE, J., concur.