DECISION
{¶ 1} This is an appeal from a Gallia County Common Pleas Court judgment in favor of the Gallia County Genealogical Society, O.G.S. Chapter, an unincorporated association (Genealogy Society), plaintiff below and appellee herein, on claims against the Gallia County Historical Society, Inc. (Historical Society), defendant below and appellant herein.
 {¶ 2} Appellant assigns the following errors for review: *Page 2 
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DISMISSING THE SUMMARY JUDGMENT MOTION OF APPELLANT, GALLIA COUNTY HISTORICAL SOCIETY."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S MOTION TO ADD A PARTY."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FINDING THAT A CONTRACT EXISTED BETWEEN THE PARTIES."
 FOURTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FINDING THAT A CONTRACT EXISTED BETWEEN THE PARTIES."
 FIFTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FINDING THAT THE GALLIA COUNTY GENEALOGICAL SOCIETY, O.G.S. CHAPTER WAS AN UNINCORPORATED ASSOCIATION."
 SIXTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFF GALLIA COUNTY GENEALOGICAL SOCIETY, O.G.S. CHAPTER WAS THE SAME GENEALOGICAL SOCIETY AS DEFENDANT'S COMMITTEE."
 SEVENTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFF GALLIA COUNTY GENEALOGICAL SOCIETY, O.G.S. CHAPTER, WAS ENTITLED TO USE THE TRADENAME `GALLIA COUNTY GENEALOGICAL SOCIETY.'"
 {¶ 3} The Gallia County Historical Society was founded in 1933. The organization went dormant for a few years, but revived in 1977. Amended by-laws provided for several standing committees within the Historical Society, including a "Genealogy *Page 3 
Committee." Later amendments to the bylaws continued to make provision for the Genealogy Committee and other committees.
 {¶ 4} In 1983 the Genealogy Committee reorganized to form the Genealogical Society. This action facilitated entry into the Ohio Genealogical Society.[1] The effect of that reorganization is the primary disputed issue in this mater. The Genealogical Society argues that it became a separate, albeit unincorporated, entity that operated independently of the Historical Society. The Historical Society, however, claims that nothing changed their relationship and the Genealogical Society remains a subordinate part of the Historical Society.
 {¶ 5} In 1995, the organizations agreed that the Historical Society give $6,500 to the Genealogical Society to publish its books and other materials. Those monies were deposited into the "publication account." The organizations also agreed that future books sales proceeds would be deposited into the publication account, but shared equally. The Genealogical Society also opened a "contingency account" to deposit foundation grants and other gifts. *Page 4 
 {¶ 6} The organizations managed to co-exist peacefully until 2004. Finding itself in financial difficulty and in need of new HVAC equipment, the Historical Society turned to the Genealogical Society for financial assistance.[2] The organizations could not agree how the Genealogical Society could help and, in desperation, the Historical Society demanded that the Genealogical Society turn over its bank accounts. Additionally, the Historical Society proposed a revision to the 1995 agreement so that the Historical Society receive two-thirds (_) of publication proceeds and the Genealogical Society receive one-third (_). This action prompted the Genealogical Society to sever ties with the Historical Society and to formally incorporate itself.
 {¶ 7} The Genealogical Society filed the instant action and sought (1) a declaratory judgment that it is the sole owner of various Oak Hill Bank accounts and that the Historical Society breached the 1995 agreement concerning the distribution of sales proceeds, (2) damages, and (3) an order that the Historical Society return publications that belong to the Genealogical Society.[3] The Historical Society denied liability and denied that the Genealogical Society was a separate entity until 2005 *Page 5 
when it attempted to incorporate. The Historical Society also counterclaimed and demanded that bank accounts be delivered to it and that the Genealogical Society be enjoined from using its name.[4] The Genealogical Society denied liability on the counterclaim
 {¶ 8} The matter came on for a lengthy bench trial in October 2006. The parties generated and introduced into evidence hundreds of pages of exhibits. Also, various witnesses gave conflicting testimony concerning the Genealogical Society's status. On the one hand, two of the Historical Society's past presidents (Roberta Roush and Mary James) testified that they always regarded the Genealogical Society as a separate entity, rather than a Historical Society committee. On the other hand, Marjorie Wood, Genealogical Society president from 1999-2004, stated that the Genealogical Society is merely a committee of the Historical Society.
 {¶ 9} After hearing the evidence and arguments, the trial court found in favor of the Genealogical Society. The court held, inter alia, that the Genealogical Society is an unincorporated association that began in 1983 and continues to exist to this day,[5] that the Genealogical Society is entitled to *Page 6 
its various bank accounts at Oak Hill Bank together with numerous publications still in the Historical Society's possession, and that the organizations had a contract from 1995 to share equally the publication proceeds. Thus, the court awarded the Genealogical Society in excess of $2,000 in damages for its share of sale proceeds that the Historical Society had not paid. Finally, the court determined that the Genealogical Society owns the trade name "Gallia County Genealogical Society." This appeal followed.
 I {¶ 10} In its first assignment of error the Historical Society argues that the trial court erroneously "dismissed" its motion for summary judgment. We disagree.[6]
 {¶ 11} The Historical Society's summary judgment motion argued that the Genealogical Society could not maintain its breach of contract and replevin claims because it had not properly incorporated pursuant to R.C. Chapter 1702. However, unincorporated associations can enter contracts, see R.C. 1745.01, own assets, Local Union 13013, Dist. 50, U.M. W. v. Cikra (1949), 86 Ohio App. 41, 52, 90 N.E.2d 154, and sue for the recovery of those assets. See R.C. 1745.01. Thus, the Genealogical Society can maintain its claims and the trial court *Page 7 
did not err by denying the Historical Society's summary judgment motion. Accordingly, we overrule appellant's first assignment of error.[7]
 II {¶ 12} The Historical Society's second assignment of error involves the trial court's October 5, 2006 decision to allow the unincorporated Genealogical Society to be added as a party defendant. Permitting this addition, the Historical Society argues, caused prejudice and denied it the opportunity to conduct additional discovery. We disagree.
 {¶ 13} The decision to join a party to an action lies in a trial court's discretion and should not be reversed absent an abuse of that discretion. Cook v. Carrigan Mains Funeral Home, Inc. (1992),79 Ohio App.3d 328, 332, 607 N.E.2d 466; Bill Gates Custom Towing, Inc. v.Branch Motor Express (1981), 1 Ohio App.3d 149, 440 N.E.2d 61. We note that an abuse of discretion is more than an error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Landis v. Grange Mut. Ins. Co. (1998),82 Ohio St.3d 339, 342, 695 N.E.2d 1140; Malone v. Courtyard by Marriott L.P. (1996),74 Ohio St.3d 440, 448, 659 N.E.2d 1242. Generally, appellate courts should not simply substitute their judgment for that of *Page 8 
the trial court. State ex rel. Duncan v. Chippewa Twp. Trustees (1995),73 Ohio St.3d 728, 732, 654 N.E.2d 1254; In re Jane Doe 1 (1991).57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181.
 {¶ 14} In the case sub judice everyone knew that the real plaintiff in interest is the Genealogical Society, either in its corporate or its unincorporated capacity. The Historical Society either knew, or should have known, that the Genealogical Society's unincorporated association status would arise. Although the Genealogical Society attempted to incorporate in 2005, one of the primary issues during the trial court proceedings was whether the Genealogical Society operated as an independent organization from 1983 to 2005. We can find no prejudice to the Historical Society by the formal addition of the Genealogy Society as an unincorporated association and the trial court did not abuse its discretion to allow the joinder.
 {¶ 15} Accordingly, we hereby overrule appellant's second assignment of error.
 III {¶ 16} Appellant's third, fourth, fifth and sixth assignments of error challenge the trial court's various factual findings. Our analysis begins with the fundamental premise that with respect to weight of evidence issues and credibility assessments, judgments should not be reversed if supported by competent, credible evidence. Vogel v.Wells (1991), 57 Ohio St.3d 91, 96, 566 N.E.2d 154; C.E. Morris Co. v.Foley Construction Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, at the syllabus. This *Page 9 
standard of review is highly deferential and even "some" evidence is sufficient to sustain the judgment and to prevent a reversal. SeeBarkley v. Barkley (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989;Willman v. Cole, Adams App. No. 01CA725, 2002-Ohio-3596, ¶ 24. A trier of fact must resolve questions concerning the evidence weight and witness credibility. Cole v. Complete Auto Transit, Inc. (1997),119 Ohio App.3d 771, 777-778, 696 N.E.2d 289; Jacobs v. Jacobs, Scioto App. No. 02CA2846, 2003-Ohio-3466 at ¶ 31. The rationale for deferring to the trier of fact on these issues is that the trier of fact is best situated to view the witnesses, to observe their demeanor, gestures and voice inflections and to use those observations to weigh credibility. SeeMyers v. Garson (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742;Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. Further, a trier of fact may choose to believe all, part or none of the testimony of any witness who appear before it. Rogers v.Hill (1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438; Stewart v. B.F.Goodrich Co. (1993), 89 Ohio App.3d 35, 42, 623 N.E.2d 591.
 {¶ 17} The Historical Society contends that the trial court erred by finding the existence of a contract between the two organizations. In particular, the Historical Society argues that the Genealogical Society was not a separate entity in 1995 when the contract was formed and that, in any event, no "meeting of the minds" occurred to form a contract. *Page 10 
 {¶ 18} Mary James testified that in 1983 the Genealogical Society was formed as an "independent organization." James further explained that independent status was necessary to become a Ohio Genealogical Society member. Even Marjorie Wood, who vigorously argued that the Genealogical Society is a Historical Society committee, admitted that the Historical Society had permitted the Genealogical Society to be an independent organization in order to affiliate with the Ohio Genealogical Society. This evidence is sufficient for the trial court's conclusion that the Genealogical Society is a separate organization.
 {¶ 19} As to the "meeting of the minds" issue with the 1995 agreement, the evidence again supports the trial court's conclusion. Estavan Matthews testified that she proposed the agreement to resolve the controversy between the organizations concerning the use of publication funds to pay for the Historical Society's newsletter or the Genealogical Society's books. Henrietta (Henny) Evans confirmed that the Historical Society gave the Genealogical Society $6,473 which, in exchange, agreed to pay the Historical Society one-half (½) of the publications proceeds.
 {¶ 20} Frank Braxton and Marjorie Wood also referred to an "agreement" during their testimony. Wood admitted that the only reason the Historical Society sought to alter the agreement is because it needed money to cover expenses. This evidence is sufficient to support the trial court's conclusion that the *Page 11 
organizations agreed in 1995 to equally share publication revenues.
 {¶ 21} The Historical Society further asserts that the trial court erred in finding that the Genealogical Society is an unincorporated association. We disagree. As we noted supra, sufficient evidence exists in the record to show that after 1983 the Genealogical Society operated as an independent entity. In view of the fact that no formal attempt to incorporate the entity occurred until 2005, the logical conclusion is that it operated as an unincorporated entity.
 {¶ 22} The Historical Society also argues that the trial court erred in determining that the Genealogical Society is "the same" entity as the Genealogical Committee that was a part of its organization since 1977. Again, we disagree. Henny Evans testified that the original Historical Society genealogical committee existed to "copy the cemeteries, the tombstones in the . . . county." Once that job was completed in 1983, the committee dissolved and a separate Genealogical Society was reorganized from the remnants. As noted above, Mary James and Marjorie Wood both stated that the Genealogical Society had to be a separate organization in 1983 to join the Ohio Genealogical Society. This is sufficient for the trial court to conclude that the Genealogical Society existed in 1983 and that it is the successor in interest to the original Historical Society genealogical committee. *Page 12 
 {¶ 23} We readily concede that ample evidence was adduced to support the Historical Society s interpretation of events.[8] Nevertheless, the trial court afforded more weight to the evidence and testimony discussed above. This is within its province as trier of fact.
 {¶ 24} Accordingly, we find no error in the trial court's factual findings and we hereby overrule appellant's third, fourth, fifth and sixth assignments of error.
 IV {¶ 25} The Historical Society asserts in its seventh assignment of error that the trial court erred in determining that the Genealogical Society could use the trade name "Gallia County Genealogical Society." We disagree.
 {¶ 26} First, the Historical Society cites no authority to support its argument. See App.R. 16(A)(7). This alone is grounds to disregard its assignment of error. See App.R. 12(A)(2). Meerhoff v. Huntington MtgeCo. (1995), 103 Ohio App.3d 164, 169, 658 N.E.2d 1109; Travis v.Hillsboro Planning Comm., Highland App. No. 05CA2, 2005-Ohio-5225, at ¶ 6, fn. 4.
 {¶ 27} Second, legal rights in a trade name are acquired by actual use, not registration. Those rights accrue to the first entity that adopts the trade name and uses it in that entity's business.Younker v. Nationwide Mut. Ins. Co. (1963), *Page 13 175 Ohio St. 1, 6, 191 N.E.2d 145. Thus, an entity that adopts a trade name and uses it in connection with its business acquires the right to use that name over any other entity that subsequently registers it. Ashcraft v.Moore (Feb. 6, 1995), Harrison App. No. 472. Here, the evidence is sufficient to conclude that the Genealogy Society used the trade name as early as 1983 — long before the Historical Society registered the name.
 {¶ 28} Third, it is not clear that the Historical Society could register the name "Gallia County Genealogical Society." A "trade name" is a name used in business to designate the business of the user.Mourray v. Evanoff (May 23, 1997), Wood App. No. WD-96-042;Cheliotis v. Gould (Dec. 14, 1994), Montgomery App. No. 14471. R.C.1329.01(B) states that a person can register a trade name if that name is the one "under which the person is operating." R.C. 1329.01(B). Here, the "Gallia County Genealogical Society" is not the trade name under which the Historical Society operates or does business. Further, evidence in the record supports a conclusion that the Historical Society has not been in the business or trade of performing genealogical work since the Genealogical Society splintered from the Historical Society and became an Ohio Genealogical Society member in 1983.
 {¶ 29} Rather, it appears that the Historical Society registered this trade name to stop Genealogical Society's use of the name. The Historical Society cites nothing to support the proposition that this is a permissible use of trade name *Page 14 
registration. Additionally, if the statute's purpose is to allow someone to register a name under which they do business, it appears that the General Assembly did not intend for a name to be used by entities not involved in such a trade or business and simply register the name to prevent another entity from using it.
 {¶ 30} For these reasons, we find no error in the trial court's decision that the Genealogical Society can use the trade name and we hereby overrule appellant's seventh assignment of error.
 {¶ 31} Having reviewed the errors assigned and argued in the brief, and finding merit in none of them, we hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Abele, J.: Concur in Judgment Opinion *Page 15 
Kline, J.: Concurs in Judgment Opinion as to Assignments of Error III, IV, V VI; Concurs in Judgment Only as to Assignments of Error I, II VII
[1] The Genealogical Society had to be independent of the Historical Society to gain admission into the Ohio Genealogical Society. The Gallia County Genealogical Society did not attempt to incorporate until 2005. Additionally, a defect apparently existed in the filings and its corporate status is in question. Therefore, although the Genealogical Society commenced this action in its corporate capacity, it later joined itself in its unincorporated capacity as well. Future references to the phrase "Genealogical Society" used in this opinion refer to both the incorporated entity as well as the unincorporated association, unless it is necessary to distinguish between the two. In that event, we will refer to the entities by explicit reference to corporate status.
[2] Estevan Matthews, former president of the Historical Society and a participant with both organizations for many years, explained that the Genealogical Society had in excess of $30,000 in its accounts at the time. The Historical Society, however, was penniless.
[3] Oak Hill Bank was initially named as a defendant, but later dismissed from the action.
[4] In 2004 the problems between the organizations increased. Frank Braxton, Historical Society president, obtained the trade name "Gallia County Genealogical Society" so that the Historical Society could stop the Genealogical Society from using that particular moniker.
[5] The court found defects in the Genealogical Society s articles of incorporation that resulted in its failure to achieve not-for-profit corporation status.
[6] Here, the trial court did not "dismiss" the motion but, rather, overruled it. Dismissal suggests that the court disposed of the motion on a procedural point without addressing the merits. See Black s Law Dictionary (5 Ed. 1979), 421 (defining both "dismiss" and "dismissal"). In overruling a motion, however, a court considers the motion's actual merits.
[7] To the extent that the unincorporated Genealogical Society was not a party to this proceeding when the motion for summary judgment was filed, the trial court later determined that the incorporation process was flawed and that the incorporated entity did not exist. Thus, the unincorporated Genealogical Society was the true party in interest during these proceedings.
[8] In other words, ample evidence exists in the record to support a contrary version of events on virtually every issue but the 1995 agreement to share publication proceeds. The existence of this agreement appears to be virtually uncontroverted from the testimony of the witnesses. *Page 1